We are now ready for our fourth case of this morning, Cecil v. Molina. Mr. Hoffman. Good morning, and may it please the Court. The central issue in this case is that Mr. Cecil is a type 2 insulin-dependent diabetic who was denied insulin for over two years as punishment for filing an administrative grievance. Mr. Cecil asked... What evidence is there in the record that when Dr. Motes began prescribing insulin in October of, I think it was 2010, he didn't believe that the level prescribed was adequate to address the diabetes? Your Honor, there's no specific medical evidence in the record that Dr. Motes didn't believe that that was a sufficient prescription. But in fact, that's actually one of the principal problems with this case, is because the deliberate indifference claim based on the withholding of insulin was dismissed at the screening stage. It wasn't allowed to proceed past the screening stage, and as a result, there was no discovery on Mr. Cecil's diabetes and what the appropriate treatment for Mr. Cecil's diabetes would be. And that's the principal problem here. We're arguing that had the claim, which was clearly stated in the amended complaint, been allowed to go forward, Mr. Cecil would have been able to pursue discovery that would have shown that a type 2 diabetic in his condition proper treatment wasn't at 5 units of MPH insulin prescribed in October of 2010. But looking at, I mean, I had a very similar question, because if the renewal of the insulin on October 29, 2010, was enough to cause the statute of limitations to start running, then this case is too late. At least on that point, never mind the other point for the moment. And even if Dr. Motz was negligent, I don't see why the fact that maybe a better dose could have been thought of is enough to state an Eighth Amendment claim. Your Honor, recently in a case, Waldrop v. Wexford, a similar situation arose. In that case, the plaintiff was a type 1 diabetic and his insulin had been terminated and he was being treated with only oral medication. But for a brief period, a doctor had prescribed him a small dosage of insulin that the plaintiff contended was just insufficient to treat his diabetic condition. And that was on summary judgment. And this court suggested that if the plaintiff had been able to put forth some evidence in the record that that was such a deviation of professional standards to supply that small dosage of insulin, that that could in fact state a claim for deliberate indifference under the Eighth Amendment. And unlike Waldrop, the situation here is my client was actually barred from pursuing discovery on the medical nature of what proper treatment would be because the claim wasn't allowed to go beyond the screening stage. So he alleges, kind of backing up, symptoms that are consistent with diabetes, feet swollen and numb, vision blurred, kidney pain, etc. And he says it's from lack of adequate diabetes therapy. And I know one of your predecessor arguments is that the district court shouldn't have construed the complaint as stating only a retaliation claim based on the remark that Dr. Motz allegedly made. But I guess there is still this issue, which is in part a factual issue, about whether the complaint is time barred. So I think that's why, even though in general what you're saying about the need to get to the next stage is something that we should consider, the October 29 date strikes me as important. We've got evidence in the record. He's saying he took the insulin from October 29 forward. I thought there was even some evidence in the record, but you can correct me if I'm wrong, suggesting that the 10 grams a day, he's getting five twice a day, is the proper starting dose. So maybe you could comment on that. Certainly. And we agree that this is the crucial question for timeliness is when this claim occurred. Did it occur in October of 2010 or in February of 2011? The issue, though, is that when Mr. Cecil started taking the five units of insulin, that wasn't treating his diabetes because four months passed before he had another appointment with Dr. Motz. And when he saw Dr. Motz at the next appointment, his blood sugars were still high because they weren't being treated. It was five units twice a day, though, right? Correct. And then it got doubled in February to 10 units twice a day. And that's simply our position here is that had the record been properly developed with expert testimony, an expert could have opined that, in fact, Dr. Motz, certainly a professional in his situation, would never have prescribed insulin at five units for a diabetic who had been taking insulin since 2006. Let's remember, he went without insulin. So your argument basically is that because Dr. Motz ultimately doubles the dosage, that would help to prove your allegation that he knew earlier that that's what it should have been? That's correct. That's certainly one inference that we think. It's not just the doubling. I thought you were saying because it also used to be the 10 twice a day, that he restores it back to what it was. Is that correct? The record's a little complicated. The type of insulin he was originally taking is a little different, so it's hard to compare exactly what the units were. So what is his situation with his diabetes? Today? Today. He's still a type 2 diabetic, and the record does reflect that he is taking insulin. That what? That he is still taking insulin today to treat his diabetes. No, what's his physical condition? Oh, he's in much better shape now that he's on insulin. Was he off insulin for a period, or just getting a different type, or less, or what? He was completely, and this is not disputed at all in the record, he was completely off of insulin for over two years from January, pardon me, June of 2008 until October of 2010. Did that do any damage to him? It did. His toes went numb, in fact. What? His feet went numb. He lost a toenail. He experienced dizziness, blurry vision. He had chronically high blood sugars, and that's reflected, actually. When he started getting the insulin again, did these symptoms disappear? They did not, actually. Once he received the five units of MPH insulin, the medical report from four months later, the first thing that you see in it says blood sugars remain high. But it did get cured when it went back up to the 10 twice a day? It did get better. But I'm curious about the damage that this interval without insulin did to his body, or whether he's recovered completely. During the period that he was without insulin? Yes, I know, but what's his current situation? His current situation, as far as I understand, is that he's taking insulin at the new facility. That's not my question. What is his bodily situation? Are there long-term effects from the two-year hiatus? The record does not reflect that. In fact, that's not what the standard demands. The fact is that Dr. Motz was deliberately indifferent by basically withholding insulin from his patient for over two years. So you're saying he was essentially in pain for two years, that he didn't have to be in physical discomfort, and that's the theory? Absolutely. So it's not that once it was fixed there's also long-lasting damage. It's just the temporal pain. That's correct. It's for that two-year-plus period. Now, Mr. Hoffman, could we go on to the spine injury for a moment? Because given the evidence that Dr. Motz repeatedly tried to treat the injury, including utilizing X-rays and outside neurological consultants, how do you think we can conclude that there is evidence of deliberate indifference as opposed to negligence or even gross negligence here? Your Honor, we concede that the back issue is a much more difficult question. And the point I'd like to emphasize is that there is a difference between the treatment Mr. Cecil received for his lower back and the treatment he did not receive for his middle back. And that's our main point. We're not disputing that he received examinations and even was referred to an outside consultant to get an MRI of his lower back. The problem is, after that all happened, he continued to have pain, and Dr. Motz ignored that pain and did not investigate alternative sources of that pain. And that's the basis of the deliberate indifference claim there. But he was getting better. I mean, he winds up jogging two or three miles a day. He couldn't have been in excruciating pain, I would imagine. Maybe he's not comfortable or he's a slow jogger, 12-minute miles or something. But that's not too bad. And, I mean, I guess it was a compression fracture of the T8 vertebra. So, I mean, once you've had one of those, you've had one. But it heals over time, maybe not the way it should have. So, as Judge Rovner says, maybe it wasn't very good care. Maybe they should have moved the x-ray machine up a little bit or something. But they were trying to respond to his complaints. He denies, at some points, middle back pain. He's talking about his legs and all sorts of other places. Yes, and, well, once again, as far as him being able to jog, the issue there is that he did recover. Some were not disputing that. But he still was suffering pain. And there was a failure on behalf of Dr. Motes to continue to follow up, to figure out what was actually causing that pain as it related to the lifting accident, which was really the source of all of this. And I see that. Sure. You can't say so without a title. All right. Ms. Stewart. Good morning, Your Honor, counsel. May it please the court, my name is Lillian Stewart, counsel for the defendant appellee, Dr. Scott Motes. Unless there are specific topics that you'd like me to discuss, there are three points that I would like to highlight for the court. I'd like to know this. If there's evidence in the record that Dr. Motes knew Mr. Cecil's condition required insulin and he failed to prescribe it for two years, wouldn't that be sufficient to support a claim of deliberate indifference? Judge Robner, it would if it were true. If you look at the record, it actually, what the original grievance was based upon was that the plaintiff desired to be restored to his sliding scale insulin. We do not argue with the fact that Dr. Motes terminated his sliding scale insulin and wanted to start him anew on a long-acting insulin called NPH. But he never prescribed it. He says something rather funny for a doctor to say, which is that Mr. Cecil was complaining about this change in type of insulin, but actually there's evidence in the record from the October 29 forward events that he, in fact, may have been a complainer, but he accepted the different type of insulin when it was prescribed for him. So I don't see why we should give dispositive significance to Mr. Cecil's complaints about the, I know you're probably referring to these medical notes that he writes where he says, you know, educating patient about insulin, he doesn't want this other kind. But I'm not sure that is enough of an answer. He never prescribes it. You're right, Your Honor. What he does is he discusses with him and says, okay, I want to prescribe you NPH insulin. He says seven times he offered it, rejected it, offered it, rejected it, because he had alternative treatments that he wanted to try. He wanted to try working out. He wanted to try maximizing his oral medications. He wanted to try checking his insulin levels, excuse me, blood sugar levels on a weekly basis to see if he could do it himself without actually having to start taking insulin. So each time that the plaintiff said something else that he wanted to do, Dr. Motz complied with them until eventually there was nothing else to do. So what are we to do with the dispute between Mr. Cecil and Dr. Motz about whether these conversations took place? Mr. Cecil, as I understand it, is denying what occurs in the medical records. Are we supposed to take the medical records as unimpeachable, or what do we do with this? I think the easiest thing to do is to start on October 29, 2010, when it was prescribed. Because of the statute of limitations. Go ahead. Describe properly. If we find that failure to provide medical care is a continuing violation, why should the limitations period regarding the diabetes claim begin to run When he begins again describing insulin, given that what the claim is here is that the level of insulin prescribed was inappropriate. It's half the amount that the man needed. And the doubling of that dosage four months later really does lend support for that claim, don't you think? Well, Judge, we're open to two points. I think, first of all, the nature of diabetes, how much insulin to give at the time is dictated by how much sugar is in his blood at the time. So because three months later, he actually prescribed it for 180 days, at 117 days he realized that it was not sufficient and he upped the dosage. Then if you look at his transfer at FCI Greenville, his new physician actually placed him on six units of insulin and said he saw a marked difference and that he would not raise his insulin level until he would become compliant with testing his blood sugar levels. So the fact that it started at five is not necessarily, there's no evidence that is shown that it was not sufficient at the time. If anything, what was shown was that when it was over the long term, when it was shown not to be sufficient, Dr. Motz complied by raising up the dosage. So, in addition, any claims for his back or his insulin therapy would be time barred? Now, the back is a little harder to make the time bar claim for. I mean, there may be other issues with the back in that, as Judge Roper was saying, he's getting some treatment, although it doesn't seem to be really addressing the problem because everybody seems to be focused on the lumbar region instead of the thoracic region. But he goes to see the outside neurologist, but it seems to me he doesn't really get the back addressed until he moves to another prison. Well, Your Honor, I would ask you to take a look at the medical records starting on November 24, 2009. That was actually the first time that, in the record, reflects the plaintiff actually complaining of pain in his left middle back. And at that time, what they believed it to be, because he also was showing blood in his urine, that he was developing kidney stones. And at that time, he was placed on steroids, calcium blockers, and then on the following. So he was seen 11-24-2009, suspected kidney stone, placed on the calcium blocker, placed on the steroids. Then March 15th of 2010, he had a CAT scan of his pelvis. Then on August 20th of 2010, once again, they mentioned that he had the CAT scan and that he was still showing blood in his urine. Do you happen to know, by the way, whether the equipment for the x-rays or the CAT scans is at the prison? Or do people have to be sent to outside facilities to have something like a back x-ray done? Your Honor, I have no idea. I'm just wondering what would the burden have been, because evidently when he's transferred to the new institution, they do an x-ray of his entire spinal cord column, his vertebrae. And that's when they see the old, by now old, compression fracture. Correct. And so I wonder if it's just, you know, if you take a picture here, why not just move the x-ray up a little bit? But if it's a big production to send him outside, maybe it's a little different. I do know that at the time that he received the x-ray for his middle back, he also displayed new symptoms. He said he had numbness in the middle of his back, which the record doesn't reflect that he complained of prior to that. And I wanted to say also, in addition, that he was sent to a urologist for the middle back pain. And he also states in his affidavit, paragraph 12, that, just to state it, he states that Dr. Motes ordered a urologist evaluation and a CAT scan. Urologist, I think you mean. Dr. Motes ordered a urologist. Oh, you're a urologist? Dr. Motes ordered a urologist evaluation and a CAT scan of my middle back to ensure my pain did not come from kidneys or other internal organs. Okay. But he then states that Dr. Motes told him additionally that he knew he had a neurological disorder but was choosing not to treat it. Yet the record shows that when he went to a neurologist, the neurologist said that he was doing fine with conservative treatment, he didn't need any surgery, and he also didn't need even an epidural steroid injection. So if you start the time to accrue the timeline on November 24th of 2009, he would have had until November of 2011 to file the claim, which he did not. And then to go on to his diabetes care, if you base it on the October 29th, 2010, when he actually began to receive treatment for the insulin, the timeline would have run out in October of 2012. Oh, that's clear. If that's the correct date, then it runs out. I think the issue is at the screening stage, when you have the comment about, I'll show you what no care looks like, which we have to assume for the sake of this case, this appeal happened, and then you know that when Dr. Motes decides to reintroduce some insulin, he does it at a very low level. Is this enough to get over the hurdle for at least stating a claim and to move on to summary judgment? Well, I think what is unique to this set of facts is that because the First Amendment claim was based on the exact same set of facts as the Eighth Amendment claim for the insulin, the district court was allowed to thoroughly review the medical records based on his treatment for diabetes, and they claimed at that point that all of the medical treatment that he was receiving from the termination to when it was started again was all based on the medical judgment of Dr. Scott Motes. So in doing that, it still would have thrown out any Eighth Amendment claim for deliberate indifference with regard to his insulin therapy. Okay. So unless there's any other questions, the defense rests on the arguments in our brief, and we ask that you confirm the district court's opinion. All right. Thank you very much. Anything further, Mr. Hoffman? The first issue I'd like to address is that counsel stated that Dr. Motes didn't prescribe NPH insulin because Mr. Cecil only wanted what was called sliding-scale insulin. However, that is a factual dispute in the record. During Mr. Cecil's deposition, counsel actually asked him, and he wanted insulin, any kind of insulin, or just the SSI insulin, sliding-scale. Or just what? I'm sorry. Or just the SSI insulin. So counsel is trying to figure out does he want any kind of insulin, or is he going to settle only for the SSI? Correct. And Mr. Cecil's response is, quote, any way I could get it, any way I could get it. That is a dispute at the heart of the record about whether or not Mr. Cecil wanted any kind of insulin, and that is in the record. So what does any way I could get it mean? Meaning that any way he could get insulin. Any type. Type, yes, to treat his diabetes, SSI, NPH insulin. He knew he needed insulin to manage his blood sugars, and he wasn't getting it. Why was he picking and choosing among insulins? What do you know about insulin? Your Honor, Mr. Cecil wasn't picking or choosing between insulins. What? He wasn't picking or choosing. No, no, but he did have this preference for the other insulin, right? So where did he get that from? I think that he got that from the fact that for the previous two years, he had been prescribed what was called sliding-scale insulin, and so in his grievances he was demanding that his insulin be restored, and he did refer to it in two of those grievances as sliding-scale. Well, what basis did he have for thinking it more effective than another type of insulin? I don't think he actually believed that it would be more or less effective. He just wanted insulin to be restored any way that he could get it. You're saying that Dr. Motz is the one who introduced this concept that he would settle only for the SSI, and you're saying that there's a dispute of fact. The problem is your dispute of fact does require us to look at all of these medical records that are there and assume that they are unreliable, and that's an unusual step to take, I'll say. Your Honor, I think the medical records actually are extremely telling in this case because there you have Dr. Motz in his own notes repeatedly saying that he thinks Mr. Cecil needs routine insulin therapy. But then he also repeatedly says that Mr. Cecil won't take it. You know, advised patient about insulin, doesn't want it. You know, over and over you see that. He does, but my client has denied that, and that is the essential factual dispute in this record, that if the deliberate indifference claim were to go to summary judgment, the jury should... I think that Dr. Motz didn't care what kind of insulin he was giving him because he wasn't giving him any insulin. And he was using this, or at least a jury could infer, as pretext for not prescribing Mr. Cecil any insulin because he was angry about the administrative grievance that Mr. Cecil had filed. And so he used this as an excuse in the notes in the medical records to not prescribe anything. So it's your view that Dr. Motz's notations regarding Mr. Cecil's... I'm sorry. His refusal, his refusal, that those notes are false? That Dr. Motz was falsely writing each and every time he's refusing to take the insulin? That's correct, and that is one of the central disputes that my client says. He never said those things. All right, well, thank you very much, Mr. Hoffman. We recruited you for this case, I believe, and we appreciate very much your help to your client and that of your firm, and thanks as well to the government. I will take the case under advisement.